IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| THOM SHIRAISHI, | ) | CIVIL NO. 11-00323 JMS/BMK |
|---|---|---|
| Plaintiff, | ) ) ) | ORDER GRANTING |
| | ) | DEFENDANT'S MOTION TO |
| vs. | ) | DISMISS COMPLAINT WITH |
| | ) | PREJUDICE AND DENYING |
| UNITED STATES OF AMERICA, | ) | PLAINTIFF'S COUNTER-MOTION |
| | ) | FOR RE-SUBSTITUTION |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT WITH PREJUDICE AND DENYING PLAINTIFF'S COUNTER-MOTION FOR RE-SUBSTITUTION**

**I. INTRODUCTION**

On May 5, 2011, Plaintiff Thom Shiraishi ("Plaintiff"), proceeding pro se, filed this Complaint against current United States Attorney Florence Nakakuni ("Nakakuni") in, as best as this court can construe, both her official capacity as a former Assistant United States Attorney ("AUSA") and her individual capacity. Plaintiff's Complaint asserts that Nakakuni's alleged failure to comply with the settlement agreement entered in *Bank of Hawaii v. Shiraishi*, Civ. No. 85-0360 (D. Haw. 1985) (the "1985 Foreclosure Suit"), violated, among other causes of action, 42 U.S.C. §§ 1983, 1985 and 1986 and the Tucker Act, 28 U.S.C. § 1491. Subsequently, the court substituted the United States as Defendant in place of Nakakuni. Doc. No. 29, Order Adopting Findings & Rec.

Currently before the court is Defendant's Motion to Dismiss Complaint With Prejudice.  In response, Plaintiff filed a Counter-Motion for Re-Substitution[1] arguing that Nakakuni was not acting within the scope of employment as a public official.  For the following reasons, the court GRANTS Defendant's Motion to Dismiss and DENIES Plaintiff's Counter-Motion for Re-Substitution.[2]

## II. BACKGROUND

This is the second of five pro se Complaints that Plaintiff has filed in Hawaii State Court since March 22, 2011 against judges and attorneys who were involved in prior litigation against the Plaintiff.[3]  This suit seeks (1) $2,052,744 in "general damages;" (2) $24,500 in compensatory damages; and (3) $3,000,000 in punitive damages from Nakakuni for alleged actions she undertook --

---

[1] The court construed Plaintiff's "Motion for Re-Substitution" as a related/counter-motion to Defendant's Motion to Dismiss.  Doc. No. 39.

[2] Pursuant to Local Rule 7.2(d), the court finds these Motions suitable for disposition without a hearing.

[3] *See Thom Shiraishi v. Edward H. Kubo, Jr., Harry Yee, Edric M. Ching*, Civ. No. 11-00225 DAE (dismissed without prejudice on September 9, 2011); *Thom Shiraishi v. Richard L. Puglisi, Elliot Enoki, Rachel S. Moriyama*, Civ. No. 11-00425 REJ (dismissed on August 10, 2011); *Thom Shiraishi v. Barry M. Kurren*, Civ. No. 11-00490 AWT (dismissed on September 14, 2011); and *Thom Shiraishi v. Robert E. Jones*, Civ. No. 11-00549 LEK (removed on September 9, 2011).  Defendant asserts that these lawsuits are "frivolous, duplicitous and abusive" and has filed an action seeking to declare Plaintiff a "vexatious litigant."  *See Shiraishi v. United States*, Civ. No. 11-00471 LEK.

approximately twenty-five years ago -- as an AUSA in connection with the 1985 Foreclosure Suit. Doc. No. 1-1, Compl. ¶ 4.[4] The 1985 Foreclosure Suit was ultimately resolved through a written Mutual Release Settlement and Indemnification Agreement (the "1986 Settlement Agreement") that was signed by all parties and filed on June 23, 1986. Doc. No. 20-5, Def.'s Mot. to Dismiss Ex. B. On November 5, 1986, the court approved the 1986 Settlement Agreement and dismissed the 1985 Foreclosure Suit with prejudice. Doc. No. 20-6, Def.'s Mot. to Dismiss Ex. C.

On May 5, 2011, Plaintiff filed this Complaint in the Circuit Court of the First Circuit, State of Hawaii. Doc. No. 1-1, Compl. Plaintiff alleges: (1) Nakakuni failed to comply with the terms of the 1986 Settlement Agreement, which resulted in "betrayal and breach of a legal and fiduciary duty, violation of a citizens Civil Rights under Title 42 [U.S.C.] §§ 1983, 1985 and 1986 [and] violation of contract rights under the Tucker Act;" (2) Nakakuni committed various crimes, including dereliction of duty, conspiracy to breach a judicial order, and embezzlement of $115,000 that was allegedly owed Plaintiff under the 1986 Settlement Agreement, in "an obvious retaliation for being embarrassed and

---

[4] In the 1985 Foreclosure Suit, Bank of Hawaii named the United States as a co-defendant because of money allegedly owed to the Farmers Home Administration and the Internal Revenue Service. Doc. No. 20-4, Def.'s Mot. to Dismiss Ex. A ¶¶ 3-4.

humiliated in having to agree to solely fund a pro se's demands and Mr. Ezra's demands;" (3) claims "against individual federal official[s] under the Bivens Doctrine that can address the Defendant's breach of contract, embezzlement, fraud and demanding a trial by jury that cannot be addressed within the Federal Tort Claims Act against the Government;" (4) the theft and embezzlement of Plaintiff's Social Security; and (5) that the United States Attorney and AUSAs lied in their complaint in an effort to cover up Nakakuni's embezzlement of the $115,000. *Id.* ¶¶ 4, 6-11, 22; *see also* Doc. No. 26, Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 9.[5]

On May 19, 2011, Nakakuni removed the action to this court pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442, and the Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679 (the "Westfall Act"). Doc. No. 1, Notice of Removal ¶ 3. Under the Westfall Act, the acting United States Attorney for the District of Hawaii certified that Nakakuni "was acting within the course and scope of her employment as an Assistant United States Attorney . . . at the time of the conduct alleged in the Complaint." Doc. No.

---

[5] Plaintiff further alleges that these wrongful acts resulted in (1) harm to his greenhouses; (2) the inability to pay rent and tuition for his children's private schooling; (3) his family having to attend counseling to deal with their depression; and (4) his divorce from his wife to allow her to have a life free from the "depression of living like the homeless." Doc. No. 1-1, Compl. at 23-26.

1-2, Enoki Certification ¶ 3.[6]

On May 25, 2011, Plaintiff filed a Motion for Remand. Doc. No. 8, Pl.'s Mot. for Remand ¶ 3. On June 7, 2011, Defendant filed an Opposition to the Motion for Remand, and Plaintiff filed a Reply on June 13, 2011. Doc. Nos. 10 and 12. On June 30, 2011, Defendant filed a Motion to Dismiss, asserting Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 20, Def.'s Mot. to Dismiss at 1.

On July 12, 2011, United States Magistrate Judge Barry M. Kurren issued a Findings and Recommendation ("F&R") to deny Plaintiff's Motion for Remand. Doc. No. 24. Magistrate Judge Kurren also substituted the United States as Defendant in place of Nakakuni. *Id.* at 7. On July 18, 2011, Plaintiff filed an Objection to the F&R and Opposition to the Motion to Dismiss, and also appealed the Order substituting the United States. Doc. Nos. 25 and 26. On July 25, 2011,

---

[6] Under 28 C.F.R. § 15.4, "[t]he United States Attorney for the district where the civil action or proceeding is brought . . . is authorized to make the statutory certification that the Federal employee was acting within the scope of [her] office or employment with the Federal Government at the time of the incident out of which the suit arose" for the purposes of removal and defense of suits. Given that Nakakuni is currently the United States Attorney for the District of Hawaii and is named as Defendant, Elliot Enoki is appropriately acting as the United States Attorney for the District of Hawaii in this case under 28 U.S.C. § 515.

Defendant filed a Response to Plaintiff's Objection. Doc. No. 27.

On July 27, 2011, this court issued an Order -- after de novo review -- adopting the F&R and affirming the Order substituting the United States. Doc. No. 29. On August 1, 2011, Plaintiff filed an Objection to the Order adopting the F&R, and on August 3, 2011, Plaintiff also again objected to the substitution of the United States as the Defendant. Doc. Nos. 34 and 36.[7] On August 15, 2011, Plaintiff filed a "Motion for Re-Substitution." Doc. No. 38. On August 25, 2011, Defendant filed a Reply to the Opposition to the Motion to Dismiss and in Opposition to Plaintiff's Counter-Motion. Doc. No. 40. On September 6, 2011, Plaintiff filed a Reply. Doc. No. 41.

In sum, currently before the court is Defendant's Motion to Dismiss Complaint with Prejudice and Plaintiff's Counter-Motion for Re-Substitution.

### III. STANDARDS OF REVIEW

A. **Motion to Dismiss Pursuant to Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction. The court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule

---

[7] Because Plaintiff's Objections filed on August 1, 2011 and August 3, 2011 were virtually identical and challenge whether Nakakuni was acting within the scope of her employment, the court construed both Objections as a Supplemental Opposition to Defendant's Motion to Dismiss.

6

12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

"[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined to the four corners of the complaint -- it may consider facts and need not assume the truthfulness of the complaint[,]" and the existence of disputed material facts will not preclude the court from evaluating the existence of subject matter jurisdiction. *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *see also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). The moving party "should prevail [on a motion to dismiss] only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation signals omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by, Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

///

///

B.   **Motion to Dismiss Pursuant to Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.*

///

///

## C. Pro Se Status

When a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally. *See Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003); *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003) ("Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." (citation omitted)). A pro se litigant must be given leave to amend his or her complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Pro se litigants, however, "must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

## IV. **DISCUSSION**

### A. Motion to Dismiss

Defendant argues that the court lacks subject matter jurisdiction or the Complaint fails to state a claim pursuant to (1) the doctrine of sovereign immunity; (2) the doctrine of absolute immunity; and (3) the expiration of any applicable statutes of limitations. The court agrees on all three grounds.

///

///

### 1. *Official Capacity Claim -- Sovereign Immunity*

Under the doctrine of sovereign immunity, claims asserted against an individual acting in their official capacity constitute claims against the United States. Because Plaintiff's suit involves allegations against Nakakuni while conducting her duties as an AUSA, Plaintiff's Complaint can be construed as an official capacity lawsuit. Such suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978)). As long as the government entity receives notice and an opportunity to respond, such suit "is, in all respects other than name, to be treated as a suit against the entity." *Id.* Therefore, when a plaintiff sues a federal official acting in her official capacity, in reality, the complaint seeks to impose liability on the United States. *Balser v. Dept. of Justice, Office of the U.S. Trustee*, 327 F.3d 903, 907 (9th Cir. 2003).

Here, Plaintiff's Complaint challenges actions Nakakuni took in her official capacity as an AUSA in connection with the 1985 Foreclosure Suit. Plaintiff's Complaint states, "[i]t is without dispute that Ms. Nakakuni was solely and totally responsible [for] her dereliction of duty and conspiracy with the FmHA to defy the settlement terms she had agreed to and approved by the Court." Doc.

No. 1-1, Notice of Removal Ex. A ¶ 8. Plaintiff further refers to Nakakuni in her capacity as an "Assistant U.S. Attorney . . . [when] defying a federal judicial order . . . and defrauding Plaintiff of his settlement rights." *Id.* ¶ 31. Based on the Complaint, this court construes Plaintiff's suit as an action against Nakakuni in her official capacity and therefore, against the United States. And, indeed, the court has already substituted the United States as Defendant.

As a suit against the United States, the doctrine of sovereign immunity bars Plaintiff's action. The United States is a sovereign; therefore, it is immune from suit unless it has expressly waived such immunity and consented to be sued or a statutory waiver applies. *United States v. Shaw*, 309 U.S. 496, 500-01 (1940); *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982). Such waiver cannot be implied, but must be unequivocally expressed. *Hutchinson*, 677 F.2d at 1328. Where the United States has not consented to a suit, dismissal of the action is required. *Id.* Further, it follows naturally that if the United States may not be sued without its consent, the existence of such consent is a prerequisite for jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). In the present case, the United States has not expressly consented to be sued, and no statutory waiver applies.[8] Therefore, dismissal of Plaintiff's case on this ground is proper.

---

[8] Upon certification under the Westfall Act, Plaintiff's case falls under the FTCA. A
(continued...)

### 2. *Individual Capacity Claim -- Absolute Immunity*

Defendant also argues that if the court construes Plaintiff's Complaint as an action against Nakakuni in her individual capacity under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the court should dismiss the Complaint under the doctrine of absolute immunity. Doc. No. 20, Def.'s Mot. to Dismiss at 11. Again, the court agrees.

When considering assertions of government immunity, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991). To determine whether a government official is entitled to absolute or qualified immunity, the court applies a functional analysis; that is, the court looks at "the nature of the function performed, not the identity of the actor who performed it." *Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). Absolute immunity properly

---

[8](...continued)
limited waiver of sovereign immunity exists under the FTCA, which states "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. To the extent substitution of the United States could be construed as a waiver of sovereign immunity under the FTCA, *see Rodriguez v. Sarabyn*, 129 F.3d 760, 764 (5th Cir. 1997), the claim nevertheless fails. Defendant affirmatively raised the defense that any FTCA claim is barred by a failure to exhaust administrative remedies, Doc. No. 20 at 14 n.10 (citing *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980)), and Plaintiff admits he did not file an administrative claim. *See* Doc. No. 1-1, Compl. ¶ 27. This failure to exhaust is an independent basis for dismissal. *See* 28 U.S.C. § 2675(a).

applies to a "government attorney's initiation and handling of civil litigation in a state or federal court . . . [when] the government attorney is performing acts 'intimately associated with the judicial phase' of litigation." *See Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

In *Fry*, plaintiffs filed a seventy-four page complaint alleging that various IRS employees, revenue agents, and attorneys had retaliated against them for the plaintiffs' exercise of their First Amendment rights. *Id.* at 834. *Fry* found that the alleged wrongful acts, including misrepresentations in briefs and other court filings, occurred during the adjudication of the tax litigation. *Id.* at 838. The allegations were therefore "intimately associated with the judicial phase," and the court upheld the attorneys' claim of absolute immunity. *Id.*

Here, it is unclear exactly how Nakakuni's purported "embezzlement" took place; however, it was allegedly committed in connection with the 1986 Settlement Agreement. As the ultimate resolution of the 1985 Foreclosure Suit, the 1986 Settlement Agreement was "intimately associated with the judicial phase" of litigation. The 1986 Settlement Agreement was signed by all parties, including Plaintiff and Nakakuni, and was filed with the court on June 23, 1986. Doc. No. 20-5, Ex. B 1-3. The 1986 Settlement Agreement reflects an understanding that all

parties have determined that the settlement of the claims in the "Shiraishi litigation" would be beneficial. *Id.* at 3. Further, on November 3, 1986, the court approved and entered the parties' Stipulation for Dismissal With Prejudice of the 1985 Foreclosure Case, based on the 1986 Settlement Agreement. Doc. No. 20-6, Ex. C.

The Ninth Circuit has extended absolute immunity to government attorneys in suits alleging wrongdoing with regard to post-litigation handling of a case. *Demery, M.D. v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984) (concluding that no "meaningful distinction can be drawn . . . between a prosecutor's post-trial handling of a case and his handling of a case before or during trial"); *Cousins v. Lockyer*, 568 F.3d 1063, 1069 (9th Cir. 2009). In *Demery*, the plaintiff filed an action under 42 U.S.C. § 1983 against a California Deputy Attorney General, alleging he conspired to deny plaintiff's right to appeal the revocation of his medical license. *Id.* at 1141-43. Specifically, plaintiff asserted that defendant failed to notify him of his revocation of a waiver of a medical course requirement. *Id. Demery* reasoned that absolute immunity was necessary for all stages of litigation because prosecutors are particularly susceptible to "harassment suits" as "the loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus." *Id.*

14

(citing *Butz*, 438 U.S. at 512).  Further, "a defendant will often transform his resentment at being prosecuted into the ascription of improper and malicious actions to the state's advocate."  *Id.* (citing *Imbler*, 424 U.S. at 425).

Similar to *Demery*, here the 1986 Settlement Agreement was part of the "post-trial handling" of the 1985 Foreclosure Suit.  735 F.2d at 1144.  This suit, which challenges acts relating to a settlement agreement, is the type of harassment the absolute immunity doctrine was designed to prevent.

This is not a case where Nakakuni's actions are "wholly unrelated to or outside of [her] official duties."  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  Even when liberally construing Plaintiff's pleadings, his allegations of betrayal, breach of legal and fiduciary duty, conspiracy, fraud, and "embezzlement" of $115,000 in conjunction with the 1985 Foreclosure Suit and 1986 Settlement Agreement are related to and within Nakakuni's official duties.  Applying a functional analysis, courts have construed similarly egregious allegations as being barred by absolute immunity.  *See, e.g.*, *Imbler*, 424 U.S. at 430 (holding a prosecutor enjoys absolute immunity from a suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, and suppressed material evidence at trial); *Genzler v. Longanbach*, 410 F.3d 630, 642 (9th Cir. 2005) (extending absolute immunity to supervisory defendants who allegedly knew

that district attorneys had granted a witness immunity in exchange for perjured testimony favorable to the prosecution); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (holding that an alleged conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding does not pierce prosecutorial absolute immunity). In short, Nakakuni is absolutely immune.

### 3. *Statutes of Limitations*

In the alternative, Defendant contends that the Complaint should be dismissed under all potentially applicable statutes of limitations, including (1) a *Bivens* claim; (2) the FTCA; and (3) the Tucker Act. Doc. No. 20 at 14. Defendant argues that because Plaintiff's Complaint alleges injury resulting from Nakakuni's representation in the mid-1980s, his Complaint is untimely. *Id.* at 15.

For a *Bivens* claim, the law of the forum state determines the statute of limitations. *See Van Strum v. Lawn*, 940 F.2d 406, 408-09 (9th Cir. 1991). Under Hawaii law, the statute of limitations for personal injury claims is two years after the cause of action accrued. Haw. Rev. Stat. § 657-7 (2008). Under the FTCA, a two-year statute of limitations also applies. 28 U.S.C. § 2401(d). A six-year limitation period applies to claims brought under the Tucker Act. 28 U.S.C. § 2501.[9]

---

[9] Further, the Court of Federal Claims possesses exclusive jurisdiction of claims arising
(continued...)

Further, the court can ordinarily dismiss on statute of limitations grounds pursuant to Rule 12(b)(6) "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). That is, a claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

Plaintiff's alleged injury occurred in conjunction with the 1985 Foreclosure Case and the 1986 Settlement Agreement. Even reading Plaintiff's pleadings liberally, nothing indicates any circumstances that could toll any statutes of limitations or that would have caused Plaintiff's action to accrue after 1986. In fact, the Complaint indicates quite the opposite. Plaintiff refers to various monetary disbursements and promissory notes dated "October 30, 1986," which were owed him in conjunction with the 1986 Settlement Agreement. *See, e.g.*, Doc. 1-1, Ex. A ¶¶ 5-10. Plaintiff thus acknowledges that he knew he was owed money in 1986 and that he did not receive it. His own allegations unequivocally

---

⁹(...continued)
under the Tucker Act in excess of $10,000. *See* 28 U.S.C. § 1491(a)(1); *Wilkins v. United States*, 279 F.3d 782, 786 (9th Cir. 2002). Even if the Complaint could be construed as stating facts supporting a Tucker Act Claim, this court lacks subject matter jurisdiction to hear such a claim.

demonstrate that his injuries accrued in 1986. Because Plaintiff's Complaint was filed in 2011 -- approximately twenty-five years after the causes of action accrued -- his Complaint is plainly barred by the applicable statutes of limitations.

**B.      Counter-Motion for Re-Substitution -- Scope of Employment**

Plaintiff challenges the court's Order substituting the United States, and seeks to re-substitute Nakakuni as Defendant. Doc. No. 38, Mot. for Re-Substitution at 6. Given the prior analysis and because substitution was proper under the Westfall Act, this Counter-Motion necessarily fails.

When a plaintiff sues a federal employee for a wrongful or negligent act, the Westfall Act empowers the Attorney General to certify that the defendant employee was "acting within the scope of his office or employment at the time of the incident out of which the claim arose[.]" *Gutierrez De Martinez v. Lamagno*, 515 U.S. 417, 420 (1995) (citing 28 U.S.C. § 2679(d)(1)). Upon certification, the court removes the employee from the suit and substitutes the United States as defendant. *Id*. The case then falls under the governance of the FTCA. *Id*.

The Attorney General's certification is conclusive for purposes of removal, although the certification is still subject to judicial review for purposes of substitution. *See, e.g.*, *id.* at 422 (stating that judicial review of the Attorney General's certification was warranted because substitution could cause action's

18

demise); *see also Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995) (citing *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991)). The Attorney General's certification is "prima facie evidence that a federal employee was acting in the scope of her employment at the time of the incident and is conclusive unless challenged." *Billings,* 57 F.3d at 800 (citing *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993)). "The party seeking review bears the burden of presenting evidence and disproving the Attorney General's certification by a preponderance of the evidence." *Id.*

Here, the acting U.S. Attorney for the District of Hawaii (on behalf of the Attorney General) certified that Nakakuni was acting within the course of her employment at the time of the alleged conduct. Doc. No. 1-2. After reviewing the certification, this court confirms that Nakakuni was acting within the course and scope of her employment as an AUSA under the Complaint's allegations. Plaintiff's Complaint alleges claims against Nakakuni based only on actions she took or failed to take in conjunction with her duties as an AUSA in the 1985 Foreclosure Case and 1986 Settlement Agreement. Doc. No. 1-1, Compl. ¶¶ 5, 7-9, 12. Plaintiff fails to provide any specific evidence that "disproves" the certification. *Billings*, 57 F.3d at 800. Therefore, Plaintiff's Counter-Motion for Re-Substitution is DENIED.

## V. **CONCLUSION**

Granting Plaintiff leave to amend would be futile. *See Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) ("A district court . . . does not abuse its discretion in denying leave to amend where amendment would be futile."); *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 356 (9th Cir. 1996) (affirming the district court's denial of leave to amend "[b]ecause the proposed claim would be redundant and futile"). Given the court's dismissal based on jurisdictional and immunity grounds, and given the facts of this case, Plaintiff plainly cannot amend his Complaint to overcome the multiple grounds on which his suit is barred. Therefore, the Complaint is dismissed without leave to amend.

The court GRANTS Defendant's Motion to Dismiss With Prejudice and DENIES Plaintiff's Counter-Motion for Re-Substitution. The Clerk of the Court is directed to enter judgment in favor of Defendant and close the file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 27, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Shiraishi v. United States*, Civ. No. 11-00323 JMS/BMK, Order Granting Defendant's Motion to Dismiss With Prejudice and Denying Plaintiff's Counter Motion for Re-Substitution